The appellant, Robert Edward Sheely, Jr., was convicted of intentional murder made capital because it was committed during the course of a burglary. He was sentenced to life imprisonment without parole.
 I
The appellant argues that his trial counsel was ineffective for failing to make necessary objections. However, the record indicates that the appellant did not present this issue to the trial court; therefore, this matter has not been preserved for review on appeal. Ex parte Jackson, 598 So.2d 895, 897 (Ala. 1992).
 II
The appellant argues that the trial court erred in denying his motion in limine concerning possible statements by the prosecutor, during the guilt phase, that the crime was especially heinous and atrocious. However, the record indicates that the appellant failed to object to this statement when the statement was made. Therefore, this matter has not been preserved for review.
 " 'A party who suffers an adverse ruling on a motion in limine can preserve the ruling for post judgment and appellate review only by objecting to the introduction of the proffered evidence and assigning specific grounds at the time of trial, unless he or she obtains the express acquiescence of the trial judge that a subsequent objection and assignment of grounds are not necessary.' Bullock v. State, 586 So.2d 284, 285 (Ala.Cr.App. 1991), quoting Parks v. State, 587 So.2d 1012 (Ala. 1991) (emphasis in original).
 " ' "In the instant case, counsel failed not only to object at trial to the references of which he now complains, but also failed to obtain the express acquiescence of the court that would make an objection at trial unnecessary. This issue is therefore not preserved for appellate review." ' "
Colbert v. State, 615 So.2d 1213 (Ala.Cr.App.), reversed on other grounds, 615 So.2d 218 (Ala. 1992), quoting Smith v.State, 585 So.2d 223, 224 (Ala.Cr.App. 1991).
Although there was some discussion between defense counsel and the trial court concerning the possibility of the prosecutor's raising this matter during trial, the trial court stated that it would make that determination when the matter of any such comments arose. The defense counsel made no request that further objections on this ground be unnecessary, or that this be a continuing objection. Therefore, this matter was not preserved for review.
 III
The appellant argues that the trial court erred in allowing the prosecutor to introduce evidence that the appellant had escaped from custody. This evidence was introduced through the testimony of Officer Eddie Ingram. The record indicates that the appellant never objected to this testimony, nor did defense counsel cross-examine this witness. Therefore, this matter was not preserved for review. Sanders v. State, 426 So.2d 497
(Ala.Cr.App. 1982); Calhoun v. State, 530 So.2d 259
(Ala.Cr.App. 1988).
 IV
The appellant argues that the trial court erred by denying his motion for a mistrial based on the court's admission of testimony that he attempted to escape from the Dothan city jail. The appellant contends that the State failed to provide him with exculpatory evidence showing that he did not attempt to escape, but rather that he only damaged property. This evidence, which consisted of documentation of the outcome of a disciplinary hearing charging the appellant with destruction of property for removing the bars from his cell, was first brought to defense counsel's attention by the appellant. The record indicates that the appellant was in possession of this documentation, and was aware of its subject matter prior to trial. Defense counsel argued that, although the appellant had the documentation, he did not, and, therefore, he argues, the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963).
Under these facts, there is no evidence of nondisclosure, because the appellant had the information in his possession prior to trial. *Page 26 
Cf. Campbell v. State, 570 So.2d 1276, 1280 (Ala.Cr.App. 1990) (defendant's claim that the State suppressed exculpatory evidence of the results of a bloodhound tracking was held to be without merit because the appellant had already been informed of the results through an affidavit attached to a search warrant). Cf. also Strother v. State, 587 So.2d 1243, 1246
(Ala.Cr.App. 1991) (defendant claimed that the State violatedBrady v. Maryland, supra, by failing to disclose that there was a dealer tag on the defendant's truck; however, the record in that case revealed that this information was already known by the defendant).
A mistrial is an extreme measure that should be granted only when absolutely necessary or when the ends of justice would otherwise be defeated. Free v. State, 495 So.2d 1147
(Ala.Cr.App. 1986). We find no abuse of discretion by the trial court in denying the appellant's motion for a mistrial.
 V
The appellant argues that the trial court erred by denying his request for a neurological exam and by disallowing his expert witness to give his opinion based on a hypothetical question.
Prior to trial the appellant filed a motion requesting a neurological examination of the defendant and requesting extraordinary expenses to allow such an exam. Attached to the motion was a letter written by Robert D. Lyman, Ph.D, which indicated that the appellant's history of inhalant abuse justified the test. When he filed his motion, the appellant was pleading not guilty and not guilty by reason of mental disease or defect. However, prior to the voir dire questioning of the venire, the appellant withdrew his plea of not guilty by reason of mental disease or defect. The following transpired during the withdrawal of his plea:
 "MR. BRANTLEY: I hereby withdraw our pleas of not guilty by reason of mental disease and defect, and the reason I do that is because I have examined the reports — psychological reports performed on Robert Sheely by Dr. Michael D'Erico and McKeown.
 "I have reviewed those reports with co-counsel and have reviewed them with Mr. Bobby Sheely, and I have informed Mr. Sheely that both of those doctors have the opinion that Bobby is not suffering from a mental disease, nor was he suffering from a mental disease at the time of the alleged commission of the crime.
 "And just a few minutes ago in the courthouse, I told Bobby it might be beneficial from the strategic standpoint to withdraw those pleas, and I explained to him we had no evidence to present . . . that [he was], in fact, suffering from a mental disease at the time the crime allegedly happened.
 "I told him that possibly, in my opinion, that some jurors might take exception to us entering a plea of not guilty by reason of mental disease, simply for the reason that some jurors might think — they might think because he is entering a plea of mental disease that he is guilty. That is what people do when they are guilty — they enter a plea of not guilty by reason of mental disease.
 "To avoid us from causing some jurors to think that and possibly us not being able to insure that they are thinking that, I told him what we might do is withdraw the plea of not guilty by reason of mental disease; therefore, there would be no questions asked of the jury venire with regard to how they feel about [a plea of] not guilty by reason of mental disease.
 "I mentioned all of that to Bobby and asked him — I told him it was my opinion we do withdraw it, and I asked him what he thought about it.
 "Bobby, would you tell the court what you thought about it?
"MR. VALESKA: Is he under oath?
"MR. BRANTLEY: Put him under oath.
"(The defendant was sworn.)
"THE COURT: You may respond.
 "MR. BRANTLEY: What do you think about us withdrawing the plea of not guilty by reason of mental disease?
"THE DEFENDANT: I think it's beneficial.
 "MR. BRANTLEY: Do you agree with me and Gene in withdrawing it? *Page 27 
"THE DEFENDANT: Yes, sir.
 "MR. BRANTLEY: Do you want to change your mind right now for any reason?
"(Defendant shakes head negatively.)
 "MR. BRANTLEY: I still feel it would be in your best interest to withdraw it, but I don't want you to think I am pushing it on you, or anything like that. Do you want to withdraw it?
"THE DEFENDANT: Yes, sir.
"THE COURT: It will be considered withdrawn.
 "MR. VALESKA: For the purpose of the withdrawal we would include a copy of Dr. D'Erico's [evaluation] as well as the evaluation done by Dr. McKeown for the purpose of appeal, if necessary.
 "I think that it's a better way to show that was their opinions, as well. That would corroborate Mr. Brantley — what Mr. Brantley and the defendant have indicated.
 "THE COURT: They would be considered part of the record for general purposes, and particularly for this withdrawal hearing of the motion to — of the not guilty by reason of mental disease or defect withdrawal — only for appeal purposes.
 "MR. SPENCER: For the record I would like to concur that I have spoken with Bobby Sheely and told him as to my beliefs concerning the withdrawing of the not guilty by reason of mental disease or defect and have concurred in the recommendation to Bobby that this be withdrawn."
It is clear that the appellant based his decision to withdraw his plea of not guilty by reason of mental disease or defect on the results of the psychological exams performed on him by two physicians and in consideration of trial strategy regarding juror perception of the proposed plea. The fact that he was not afforded extraordinary expenses to have a neurological examination performed in order to determine whether his history of inhalation of gasoline fumes had affected his mental abilities, apparently played no part in his decision to withdraw this plea. Because he was no longer pleading on this ground, the requested evaluation was not necessary. Cf.Smelley v. State, 564 So.2d 74, 88 (Ala.Cr.App.), writ. denied,564 So.2d 89 (Ala. 1990) (limiting funds for additional psychiatric evaluation was not error and the defendant's claim of ineffectiveness of counsel could not be based on this ground, because the defendant advised the trial judge at the close of the evidence that he chose not to have his insanity defense presented to the jury).
 " 'An accused does not have a constitutional guarantee to publicly-funded psychiatric evaluations of his own choosing. Nelson v. State, 511 So.2d 225, 237 (Ala.Cr.App. 1986), aff'd, 511 So.2d 248 (Ala. 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). He is only entitled to such an evaluation when he claims insanity to be a "significant factor at trial." Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).
 " 'The decision to allow an indigent defendant access to public funds for psychological evaluation lies in the discretion of the trial judge. The trial judge has the opportunity to observe the accused firsthand and make a determination. Bailey v. State, 421 So.2d 1364, 1366-67 (Ala.Cr.App. 1982).' "
Brown v. State, 581 So.2d 1133, 1134-35 (Ala.Cr.App. 1990), quoting Gay v. State, 562 So.2d 283, 290 (Ala.Cr.App. 1990).
In this case two competent physicians conducted psychological examinations of the appellant. The withdrawal of his plea of not guilty by reason of mental disease or defect indicates that insanity was not to be a "significant factor" in his defense, despite the trial court's refusal of these extraordinary expenses for the neurological examination.
The appellant also alleges that the trial court erred in sustaining of the State's objections to hypothetical questions asked of Dr. Robert Lyman concerning the possible results of neurological testing of the appellant. The record indicates that, prior to trial, a hearing was held on the appellant's motion requesting a neurological examination and expenses to pay for the examination. During this hearing, Dr. Lyman indicated that he had reviewed certain records of the Department of Human Resources relating to *Page 28 
the appellant, but that he had not examined the appellant. He testified that the record suggested that the appellant had a chronic problem with inhaling gasoline fumes. Defense counsel then asked Dr. Lyman if, based on his having reviewed those records, he was of the opinion that a neurological examination of the appellant was indicated. The trial court sustained the prosecutor's objection to that question, stating that Dr. Lyman could offer this testimony only if the records on which he had based his opinion had been admitted into evidence. "[A] medical expert may give opinion testimony based in part on the opinions of others when those other opinions have been admitted into evidence." Ex parte Bailey, 590 So.2d 354, 356 (Ala. 1991). In this case, the records from which Dr. Lyman was drawing his opinions were not introduced into evidence. Therefore, the trial court properly sustained the prosecutor's objection.
 VI
The appellant argues that the trial court erred in denying his motion in limine requesting that the prosecutor not be permitted to divulge to the jury that the appellant refused to give a statement after being advised of his rights pursuant toMiranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966). This motion, however, was granted by the trial court. Therefore, there is no adverse ruling from which the appellant can appeal.
However, the appellant also moved to suppress a statement made before he was advised of his Miranda rights, because, he argues, that statement was not voluntary. The record indicates, however, that the motion to suppress originally addressed only certain photographs, but that during the hearing on the motion, defense counsel requested that the motion also include the statement. The prosecutor responded that one of the two officers who was present when the appellant gave his statement was not subpoenaed because, he said, the motion to suppress originally did not address the statement, but that the other officer was present. The prosecutor stated that information concerning this "spontaneous" statement was contained in the police report, which had been made available to defense counsel. The prosecutor, reading from the police report, stated that after the appellant had invoked his right to remain silent, he was advised that he was under arrest for capital murder and that he would be taken to the jail. The report stated that he was told by the officers that they could not ask him any questions and that, if he wished to speak to them, he would have to send word through the jailer. According to the report, the officers then began obtaining biographical information from the appellant. The prosecutor, still reading from the report, made a proffer that the absent officer's testimony would indicate that the appellant was not being "questioned" in any manner when he made the statement that was the subject of the motion to suppress. The officer wrote in the report that the appellant had spontaneously stated that he had no reason to talk to the officers, that he had broken into the victim's mobile home to get something to eat, that he had found the shotgun and shells to go hunting with, and that, when the man who lived in the mobile home came home, he shot him. The appellant further stated that he had not thought that he could do that. The prosecutor again noted that defense counsel had been given the police report containing this statement. He then proffered that the officers would testify that they had asked the appellant no questions, but that the appellant had made a spontaneous statement. Defense counsel asked the officer who was present whether he had heard the appellant's statement. The officer responded that what the prosecutor had read was not a verbatim quote but was a summary of what the appellant had said. The officer then repeated the substance of the statement and testified that it was given "during the paperwork part of our investigation where we took information from Mr. Sheely and put it on the arrest report." He stated that there "was no interrogation at all at this point . . . just, what's your name? [W]hat's your address? [W]here do you live? [W]here were you born? Information that goes on the arrest report." The prosecutor then continued reading from the report and stated that, after the appellant made this statement, he *Page 29 
was asked if he was willing to talk with the police detectives, to which he replied, "Yes." The appellant was again advised of his rights and indicated that he had changed his mind. The appellant again stated that he needed to talk to his lawyer.
At trial during the direct examination of the police officer who was present at the time the appellant made his statement, the officer again testified that the appellant made the statement spontaneously, without being questioned, during the compiling and processing of the appellant's biographical information. During this testimony, defense counsel stated, "Just for the record, I would like to renew my objection." The trial court overruled the objection.
 " '[A]n accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.' Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981) (Emphasis added [in Herriman].) Thus, where a suspect is held in custody, he cannot be subjected to further interrogation after requesting an attorney, 'unless the suspect himself initiated dialogue with the authorities.' Wyrick v. Fields, 459 U.S. 42, 46, 103 S.Ct. 394, 395, 74 L.Ed.2d 214 (1982). However, 'even if the conversation taking place after the accused has "expressed his desire to deal with the police only through counsel," is initiated by the accused, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation.' Oregon v. Bradshaw, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983).
 ". . . '[W]hen a right so fundamental as that to counsel at trial is involved, the question of waiver must be determined on "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." ' North Carolina v. Butler, 441 U.S. 369, 374-75, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286 (1979). In the present case, under the totality of the circumstances, ' "including the necessary fact that the accused, not the police, reopened the dialogue with the authorities," ' Oregon v. Bradshaw, supra, 462 U.S. at 1046, 103 S.Ct. at 2835, quoting Edwards v. Arizona, supra, 451 U.S. at 486, 101 S.Ct. at 1885, the appellant knowingly and intelligently waived his right to counsel."
Herriman v. State, 504 So.2d 353, 359 (Ala.Cr.App. 1987). See also Williams v. State, 627 So.2d 994 (Ala.Cr.App. 1992).
Moreover, any conflicts in the testimony or credibility of witnesses during a suppression hearing is a matter for resolution by the trial court. Herriman v. State, supra, at 359, citing Hamilton v. State, 492 So.2d 331 (Ala.Cr.App. 1986). Absent a gross abuse of discretion, a trial court's resolution of this conflict should not be reversed on appeal.Id.
In this case, although the appellant had asserted his right to counsel and questioning had ceased, the evidence indicates that the appellant's statement was given voluntarily when he reinstigated discussion with the police officers. "Volunteered statements are not barred by Miranda. See Miranda v. Arizona,384 U.S. 436, 478, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966). 'An unsolicited remark, not in response to any interrogation, does not fall within the Miranda rule.' Crawford v. State,479 So.2d 1349, 1352 (Ala.Cr.App. 1985)." Jennings v. State,588 So.2d 540, 543 (Ala.Cr.App. 1991). See also Fisher v. State,587 So.2d 1027, 1038 (Ala.Cr.App. 1991), certs. denied, ___ U.S. ___, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992),587 So.2d 1039 (Ala. 1991), citing Smith v. State, 515 So.2d 149, 152
(Ala.Cr.App. 1987). See also Bass v. State, 585 So.2d 225, 237
(Ala.Cr.App. 1991) ("[t]he evidence shows that the appellant's statements following his arrest were spontaneous and voluntary"); Whittlesey v. State, 586 So.2d 31, 33 (Ala.Cr.App. 1991) ("[t]he statement was spontaneous and unsolicited and, therefore, was admissible. See Bedingfield v. State,47 Ala. App. 677, 260 So.2d 408 (1972)"). *Page 30 
Under the facts and circumstances of this case, there was no abuse of discretion by the trial court in denying the appellant's motion to suppress the statement.
 VII
The appellant argues that the trial court erred in denying trial counsel's motion to withdraw. The State argues that any error in the trial court's refusal to allow the appellant's attorney to withdraw was harmless. The appellant's attorney, who requested to withdraw several weeks prior to trial, did so because he anticipated that there might be a conflict of interest because he had previously represented the Department of Human Resources and he anticipated introducing evidence during the sentencing phase of the trial concerning the Department of Human Resources' "poor" treatment of the appellant. The trial court denied this motion on the ground that co-counsel could address this matter so that the attorney would not have to participate in this aspect of the defense. Furthermore, after the sentencing phase in this case, the jury recommended that the appellant receive a sentence of life imprisonment without parole, and the trial court subsequently sentenced the appellant to life imprisonment without parole.
Under the circumstances of this case, any error in denying the trial counsel's motion was error without injury, and the appellant was not prejudiced by this denial.
 "In holding that the harmless-error rule governs even constitutional violations under some circumstances, the Court recognized that, given the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, in that the Constitution does not guarantee such a trial. . . .
 "Since Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)], the Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations. . . . The goal . . . is 'to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without becoming mired in harmless error.' "
United States v. Hasting, 461 U.S. 499, 50809, 103 S.Ct. 1974,1980, 76 L.Ed.2d 96 (1983) (citations and footnote omitted).
Thus, any error resulting from trial counsel's continued representation was harmless, because co-counsel could and did handle the area of concern at sentencing, and the appellant was sentenced to life imprisonment without parole.
AFFIRMED.
All Judges concur.