Luther Hollenquest was charged by indictment with child molestation. A jury found the appellant "guilty as charged," and the trial court set punishment at five years imprisonment in the penitentiary. The appellant prosecutes this appeal from the denial of his motion for new trial.
The prosecutrix, a seven year old child, resides in Brooklyn, New York. During December, 1979, she and her parents were visiting and staying with relatives in the Youngfort Village section of Montgomery, Alabama.
The appellant, a friend of the prosecutrix's family, visited with them everyday after he got off work. On December 20, 1979, about 6:00 p.m., the prosecutrix's mother asked the appellant to drive the prosecutrix across town to her grandmother's house in the Tulane Court area of Montgomery.
The prosecutrix testified that on the way to her grandmother's the appellant took her to a "parking place" and molested her. She testified she cried and tried to get away. Shortly thereafter the appellant took the prosecutrix to her grandmother's house.
After the appellant left she told her grandmother what happened. The grandmother phoned the prosecutrix's mother who in turn contacted the police.
A warrant was obtained for the arrest of the appellant. Detective Corporal Ed Munson of the Montgomery Police Department's Youth Aid Division and several other officers arrested the appellant at his residence during the early morning hours of December 21, 1979.
The appellant took the witness stand in his own behalf and denied the allegations.
 I
During the State's direct examination of Mrs. Catherine Bradberry, grandmother of the prosecutrix, the following occurred:
 Q (Mr. Pool continues) Mrs. Bradberry, did she tell you what had happened to her?
A She said she had been —
MR. SKINNER: Object.
 THE COURT: Don't tell us what she said. Just answer the question.
A Well, she just said he raped her.
MR. SKINNER: I object to that.
 THE COURT: Will the Jury step into the Jury Room, please?
 (Whereupon, the Jury was removed from the Courtroom, and the following proceedings were had out of the presence of the Jury:)
 THE COURT: Mrs. Bradberry, you have to respond to the question as asked. Mr. Pool's question to you was: Did she tell you what happened to her? And the answer to that question if she did is, yes, she did. But that is the extent of it. *Page 387 
 MR. SKINNER: Your Honor, I overheard — she answered the question that the child said that she was raped. And that was done in the presence of the Jury. At this time, I would like to make a Motion for a mistrial. It is something I don't think an admonishment to the Jurors can be removed.
 THE COURT: I am going to admonish them and then I am going to ask each and every one of them if they feel like it is going to affect their individual verdict in this case. Bring them back in. Mr. Pool, it might be best if you would not ask questions which are calculated to elicit answers that are not admissible.
 MR. POOL: I wasn't, Your Honor. (Whereupon, the Jury was returned to the Courtroom, and the following proceedings were had in the presence of the Jury:)
 THE COURT: Ladies and gentlemen of the Jury, you will disregard the last answer that this witness gave. An objection was made and before the Court could sustain that objection, the witness answered the question. Those of you who are familiar with trials of cases know that that answer was a hearsay answer. And hearsay is not admissible in a court of law because the party against whom it seeks to be admitted was not present there and doesn't know whether that statement was made or not, and neither does anybody else and neither do you. And the witness can't be cross-examined on that point because it is a statement made outside of your presence and it is a statement made outside the presence of the Court and its credibility is eminently suspect in the trial of any case. But, nevertheless, you heard the answer to that question. And I am going to put this question to each and every one of you: Is there any member of this Jury, after hearing the answer to that question, that feels like the answer to that question may in any manner influence their ability to render a verdict in this case based on the legal and admissible evidence in this case? Anyone? If you have the slightest doubt whatsoever, tell me.
 All right. The Motion is denied. Let's proceed." (R. p. 48-59)
The appellant contends that Mrs. Bradberry's hearsay testimony amounts to reversible error, especially so since her testimony related to a more heinous offense than the one he was charged with.
The rule in Alabama is that testimony concerning the prosecutrix's complaint may be related by a third party witness. Smelcher v. State, Ala.Cr.App., 385 So.2d 653 (1980). Only the fact that the complaint was made may be testified to and not the details of the occurrence. Lawson v. State, Ala.Cr.App., 377 So.2d 1115, cert. den., Ala., 377 So.2d 1121
(1979).
Although we believe rape and child molestation to be equally atrocious and detestable, if any error occurred in allowing the complaint of rape before the jury, it was cured by the trial court's prompt, responsive, and conscientious action in admonishing the witness, instructing the jury to disregard the answer from their consideration, and by polling the jury as to the prejudicial effect of the remark. Lawson, supra; Long v.State, Ala.Cr.App., 370 So.2d 354 (1979); Braden v. State,49 Ala. App. 97, 268 So.2d 877 (1922). We find no abuse of discretion in the denial of the appellant's motion for mistrial. Hurt v. State, Ala.Cr.App., 361 So.2d 1163 (1978);Adair v. State, 51 Ala. App. 651, 288 So.2d 187 (1974); Retowskyv. State, Ala.Cr.App., 333 So.2d 193 (1976).
 II
The appellant claims the trial court erred by denying his motion to suppress items of clothing seized by the police during his arrest. Among the clothing was a pair of underwear. Scientific tests revealed the presence of semen on the front area of the underwear. *Page 388 
A hearing was held on the motion to suppress approximately three weeks before trial. The evidence at that hearing was in hopeless conflict. Montgomery Police Officer Sam A. Smith testified that he, Detective Munson, and several other police officers arrived at the appellant's residence during the early morning of December 21, 1979. They were armed with a warrant for the appellant's arrest. Officer Smith proceeded to the rear entrance of the residence while the other officers approached the front door. Officer Smith entered the appellant's residence through the front entrance after the other officers entered the house. He could not testify as to whether they had permission to enter.
Before leaving police headquarters, Officer Smith and Detective Munson observed a photograph of the appellant. After the officers entered the house the appellant falsely identified himself as "Henry Jordan." Based on the earlier observation of the photograph, Officer Smith identified "Henry Jordan" as the appellant, advised him they had a warrant for his arrest, and placed him under arrest. Detective Munson advised the appellant of his Miranda[1] rights.
Officer Smith then testified to the following:
 "Corporal Munson asked Mr. Hollenquest where his clothes were that he had worn the day prior to that, and he advised that they were in the bedroom on the floor, and Corporal Munson advised him that we would need those clothes to take to the lab. And at that time he gave us permission to get the clothes and we went in the bedroom and picked the clothes up off the floor,. . . ." (R. p. 5A)
Officer Smith testified they did not have a search warrant. The State presented no evidence that they conducted any other search and seizure.
Erma Jean Hollenquest testified that she answered the police officers' knock at the door on the early morning of December 21, 1979. The police identified themselves and said they had a "search warrant" for the appellant. Mrs. Hollenquest testified, "I stepped back — I don't know whether I told them to come in or not to come in. But I stepped back during that time and they did come in." She testified that she "did not give anybody permission to do anything."
Mrs. Hollenquest testified the appellant gave the police a false name. She also testified the police "looked" in all the rooms of the house.
The appellant testified he gave the police a false name because he thought they were looking for him for failure to pay a "DWI ticket." He testified his wife told him the police had a "warrant" for him.
The appellant stated he did not point out his clothes to the police and did not give them permission to take the clothes. He also testified the police searched his house against his wishes and they failed to produce a search warrant. The appellant stated he was not advised of his rights.
The evidence does not make clear whether the police entered the appellant's residence with Mrs. Hollenquest's consent. This is cleared up somewhat by the testimony of Detective Ed Munson at trial. He testified that he identified himself to Mrs. Hollenquest, advised her that he had an arrest warrant for the appellant, and stepped inside the residence after requesting her to let him in. Nevertheless, the fact that the police had an arrest warrant, they had reason to believe the appellant was inside, and they knocked and announced their intentions made unnecessary the need for obtaining consent to enter the premises. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371,63 L.Ed.2d 639 (1980); United States v. Gaultney, 606 F.2d 540
(5th Cir. 1979); Cf.: Conner v. State, Ala.Cr.App.,382 So.2d 601, cert. den., Ala., 382 So.2d 605 (1980), (police armed with search warrant gained entry by kicking in the front door after knocking and announcing).
Once inside the house the police contend they asked the appellant where his clothes were and that he pointed them out and gave them permission to take them. The *Page 389 
evidence for the appellant was directly contra.
Consent is a well recognized exception to a warrantless search and seizure. Daniels v. State, 290 Ala. 316,276 So.2d 441 (1973). Schneckloth v. Bustamonte, 412 U.S. 218,93 S.Ct. 2041, 26 L.Ed.2d 854 (1973) and Bumper v. North Carolina,391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) require that it must be determined from the totality of the circumstances whether an individual subjected to a search was submitting to police authority or consenting. Gass v. State, Ala.Cr.App.,372 So.2d 904 (1979).
The trial court in this instance chose to believe the testimony of Officer Smith. In making this ruling the trial court noted that the appellant and his wife candidly testified that they participated in the perpetration of a falsehood and that the appellant had previously been convicted of a crime involving moral turpitude[2], thereby affecting his credibility as a witness.
The law in Alabama is well settled that it is the duty of the trial court to resolve any conflict in the testimony and not within the province of this court. Snipes v. State, 50 Ala. App. 139, 277 So.2d 413 (1973). The trial court was in a better position to judge the demeanor of the witnesses. Payton v.State, 47 Ala. App. 347, 254 So.2d 351 (1971). We find no error in this instance.
After having searched the record for error and finding none, this case is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
[2] Carnal knowledge.