The appellant, Devon Quinn, pleaded guilty to trafficking in cocaine, a violation of § 13A-12-231, Code of Alabama 1975. He preserved, by a written plea agreement, his right to appeal an adverse ruling on his motion to suppress entitled "Motion to Dismiss". He was sentenced to three years' imprisonment and was ordered to pay a fine of $50,000.
Before trial, the appellant moved to suppress evidence consisting of 13 plastic baggies containing a total of 234 rocks (approximately 226.5 grams) of crack cocaine seized during a warrantless search of a motel room registered to the appellant. After a hearing, the circuit court denied the motion. The appellant now contends that this ruling constituted reversible error.
The state's evidence tended to show that on June 6, 1991, two police officers with the Huntsville Police Department were told by a confidential informant that three black men, in possession of crack cocaine, had checked into rooms 322 and 323 at a Motel 6 in Huntsville. The two officers went to the motel, where they observed a van that met the informant's detailed description of the vehicle the suspects would be driving. After about 15 minutes, from their position in the parking lot, they saw two black men leave room 322 and drive off in the van. The officers followed the van and eventually stopped it.
After asking the two men to leave the vehicle, the officers identified themselves, informed them that they were investigating a report of narcotics trafficking, and read them their Miranda[1] rights. One of the suspects, Jackie Wiggins, admitted that there was cocaine in room 322, but said that it was placed there by the appellant, who was still at the motel. He also stated that he was staying in room 322 and that the appellant was staying in room 323. Wiggins then produced a key to room 322 and signed a consent form giving the officers permission to search the room.
At the motel, the officers spoke with the desk clerk, who told them that both rooms 322 and 323 were registered in the appellant's name. The clerk also informed them that the appellant stated that one of the rooms was for himself and that the other was for his son. The desk clerk gave the officers a pass key to room 322.
On the third floor, the officers encountered the appellant in the hallway. They identified themselves and told the appellant that they were investigating a report of drug trafficking. The officers used the pass key to enter room 322. The appellant neither consented nor objected to the officers' entering and searching the room. While searching the room, one of the officers removed a misplaced bathroom ceiling tile and found a box containing 13 clear plastic baggies of crack cocaine in the ceiling. The appellant, who was then read his *Page 485 Miranda rights, admitted that the cocaine was his.
The appellant presents three arguments in support of his contention that the search of the motel room was illegal.
 I
Initially, the appellant argues that the information acquired from Wiggins, should not have been received into evidence at the suppression hearing because Wiggins did not testify at the hearing. The appellant did not object when Wiggins's written consent and waiver of rights form were received into evidence at the hearing. "In order to preserve an issue for appellate review, a timely objection at trial must be made." Acoff v.State, 435 So.2d 224, 225 (Ala.Cr.App. 1983). See also Story v.State, 588 So.2d 948 (Ala.Cr.App. 1991).
The statements made by Wiggins before the search of the motel room were necessary to establish probable cause to believe that there was crack cocaine in the motel room registered to the appellant but occupied by Wiggins. As the United States Supreme Court stated in United States v. Matlock, 415 U.S. 164, 172-73,94 S.Ct. 988, 994, 39 L.Ed.2d 242 (1974), "the rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence." This is so because at hearing on a motion to suppress, the judge is the finder of fact, but at the trial, where strict rules of evidence apply, the jury is the finder of fact. The United States Supreme Court further stated in Matlock:
 "In Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), it was objected that hearsay had been used at the hearing on a challenge to the admissibility of evidence seized when a car was searched and that other evidence used at the hearing was held inadmissible at the trial itself. The Court sustained the trial court's rulings. It distinguished between the rules applicable to proceedings to determine probable cause for arrest and search and those governing the criminal trial itself — 'There is a large difference between the tribunals which determine them, and therefore a like difference in the quanta
and modes of proof required to establish them.' Id., at 173 [69 S.Ct. at 1309]. That certain evidence was admitted in preliminary proceedings but excluded at the trial — and merely to 'illustrates the difference in standards and latitude allowed in passing upon the distinct issues of probable cause and guilt.' Id., at 174 [69 S.Ct. at 1310]."
415 U.S. at 173, 94 S.Ct. at 994. See Nation v. State,579 So.2d 690 (Ala.Cr.App. 1990); Tierce v. State, 396 So.2d 1090
(Ala.Cr.App. 1981). Even had this issue been specifically preserved for our consideration, the actions of the trial court were consistent with the law in regard to suppression hearings as pronounced in Matlock. No error occurred here.
 II
Next, the appellant argues that he did not consent to the search of room 322, and that Wiggins's third-party consent was ineffective and the warrantless search unlawful. Whether a co-occupant of a motel room may consent to a search of a room not registered in his name is a question of first impression for this court as is the question of whether the previously obtained consent of a co-occupant is valid when the appellant, in whose name the room is registered, is present but neither objects nor consents to the search.
Police can lawfully search a motel room without a warrant pursuant to the consent of the person in whose name the room is registered. Mitchell v. State, 391 So.2d 1069
(Ala.Cr.App. 1980); Bridges v. State, 52 Ala. App. 546,295 So.2d 266 (1974). Further, "permission to search [may also be] obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." Matlock, 415 U.S. at 171,94 S.Ct. at 993 (footnote omitted) (emphasis added).
In Matlock, the United States Supreme Court defined "common authority" as the "mutual use of property by persons generally *Page 486 
having joint access or control for most purposes."415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. The rationale behind the third-party consent doctrine lies in the theory that "any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." 415 U.S. at 171, 94 S.Ct. at 993. See also Ex parteHilley, 484 So.2d 485, 490 (Ala. 1985); Brooks v. State,520 So.2d 195, 198 (Ala.Cr.App. 1987); C. Gamble, McElroy's AlabamaEvidence, § 334.01(3)(b) (4th ed. 1991). Determining whether an individual has common authority to consent to a search is " 'judged against an objective standard: would the facts available at the moment . . . "warrant a man of reasonable caution in the belief" ' that the consenting party had authority over the premises?" Illinois v. Rodriguez,497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990) (quotingTerry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880,20 L.Ed.2d 889 (1968)).
Here, the police could "reasonably believe" that Wiggins and the appellant had joint access to room 322 and that Wiggins could give a valid consent to search the room. When the police observed Wiggins in the parking lot after leaving room 322, he was driving a van matching the description given by the informant, and Wiggins admitted that he was staying in room 322. He had a key to the room and he told police that there was cocaine in the room but that it was not his. He also told the police that the appellant was staying in room 323. Police then talked with the desk clerk who told them that when the appellant had checked into the motel, he had wanted two rooms and that he had understood that one room was for him and one was for his son. The facts support the actions of the police officers.
Next, we address the issue of whether the search was unlawful because the officers, who already had Wiggins's consent, did not ask the appellant for permission to search the room despite his presence on the scene and despite the fact that the room was registered in his name. Most cases regarding third-party consent specify that such consent "is valid as against theabsent, non-consenting person with whom that authority is shared," Matlock, 415 U.S. at 170, 94 S.Ct. at 993 (emphasis added), and have not reached the question whether an individual who is present at the time of the search must also give his consent along with the third party.
In Matlock, however, the United States Supreme Court upheld the search of the appellant's room, conducted pursuant to the consent of the woman with whom he shared the room, despite the fact that the appellant was present and the officers did not ask him for permission to search. Even though Matlock does not specifically speak to the issue of whether the consent of the appellant need be acquired when he is present, the ultimate disposition on the facts lead to the inference that the valid consent of a co-occupant is all the consent that is necessary. The court implied that by having joint occupancy of an area, the appellant has "assumed the risk" of the other party may consent to a search of the premises. This reasoning is "certainly inconsistent with any blanket requirement that the suspected co-inhabitant be sought out and his view solicited." 3 W. LaFave, Search Seizure: A Treatise of the FourthAmendment § 8.3(e) (2d ed. 1987).
Based on Matlock, we hold that under the facts of the present case the police did not have to seek the permission of the appellant who was present at the scene of the search. SeeMatlock. See G. Fisher, Search and Seizure, Third-PartyConsent: Rethinking Police Conduct and the Fourth Amendment, 66 Wn.L.Rev. 189, 189-90 (1991) ("[i]f police can justify their reliance on third parties' authority, courts should allow police to rely on third parties' consent regardless of defendants' presence or absence").
Under the language of most third-party consent cases, if the appellant were to object at the scene of the search, then the consent of the absent co-occupant would be overridden. LaFave, supra § 8.3(e) and cases cited therein. However, this court has held that where third party consent is *Page 487 
given at the scene of the search, the appellant'ssilence during the acquisition of that consent does not amount to an objection to the search and seizure. Hubbard v. State,374 So.2d 427 (Ala.Cr.App. 1979) (Seizure upheld where officers, while executing a search warrant for the house where the appellant lived with his mother, were given permission by his mother to seize furniture not set out in the warrant, despite the appellant's presence, his failure to consent to object to the seizure, and his apparent ownership of the furniture). See also LaFave, § 8.3(d).
"[W]hat is at issue when a claim of apparent consent is raised is not whether the right to be free of searches has beenwaived, but whether the right to be free of unreasonable
searches has been violated." Rodriguez, 497 U.S. at 187,110 S.Ct. at 2801 (emphasis original). Moreover, "[w]hat [an individual] is assured by the Fourth Amendment itself, . . . is not that no government search of his house will occur unless he consents; but that no such search will occur that is 'unreasonable.' " Rodriguez, 497 U.S. at 183,110 S.Ct. at 2799.
By giving Wiggins a key to the room and allowing him to stay there, the appellant in this case assumed the risk that Wiggins might allow the room to be searched. The consent here was obtained validly, and the search was executed within the terms of its authorization. The appellant never objected to the search of Wiggins's room at the time of the search. In accordance with the facts cited above, we hold that the appellant's permission to search the motel room was not necessary after the police obtained a valid consent from a co-occupant. The search of the room was reasonable and did not violate the Fourth Amendment.
 III
Last, the appellant contends that the third-party consent to search the room is ineffective because Wiggins originally denied involvement with the drugs found in the ceiling of his room. We disagree.
The appellant argues that under Higgins v. United States,209 F.2d 819 (D.C. Cir. 1954), when one denies his guilt and then consents to the search of a room in which he knows evidence that will prove his guilt is present, the consent is rendered invalid.
This is not the view we currently take. In Alabama, a denial of guilt followed by a valid consent to search where inculpatory evidence will inevitably be discovered does not render the consent to search ineffective. Behel v. State,390 So.2d 662 (Ala.Cr.App. 1979), cert. denied, 390 So.2d 671
(Ala. 1980). The state presented sufficient evidence at the suppression hearing to prove that Wiggins's consent was obtained voluntarily, and we hold that the court did not err in receiving his written consent form into evidence. McLemore v.State, 562 So.2d 639 (Ala.Cr.App. 1989), aff'd after remand,571 So.2d 386 (Ala.Cr.App. 1990).
After reviewing the above facts, we find no error in the circuit court's denial of defense's motion to suppress.
For the foregoing reasons, the judgment in this cause is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).