Danny Kennedy, the appellant, was charged in an eight-count indictment with interfering with custody, in violation of Ala. Code 1975, § 13A-6-45 (three counts involving A.K. and one count involving K.C.); the production of obscene matter, in violation of § 13A-12-197 (one count involving A.K. and one count involving C.F.); and rape in the second degree, in violation of § 13A-6-62 (one count involving C.F. and one count involving K.C.). He was convicted of three counts of interfering with the custody of 13-year-old A.K., one count of production of obscene matter involving A.K., one count of production of obscene matter involving 15-year-old C.F., and one count of second degree rape involving C.F. He was sentenced to 50 years' imprisonment on these convictions. He raises five issues on this direct appeal from those convictions. *Page 24 
 I.
The appellant argues that the trial court abused its discretion in finding that "the officers searched the premises with consent of the defendant," Suppression Hearing Record (S.H.R.) 60, and in overruling his motion to suppress the evidence seized as a result of that search.
"A person may consent to a search without a warrant and thereby waive any protection afforded by the Fourth Amendment to his right of privacy. Duncan v. State, 278 Ala. 145,176 So.2d 840 (1965). Consent to a search must be knowingly, intelligently, and freely given." Ex parte Wilson,571 So.2d 1251, 1255 (Ala. 1990). "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041,2047-48, 36 L.Ed.2d 854 (1973). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248,249-51, 111 S.Ct. 1801, 1803-04, 114 L.Ed.2d 297 (1991).
This Court has recently held:
 "A search pursuant to a valid consent is constitutionally permissible. See Ex parte Wilson, 571 So.2d 1251, 1255 (Ala. 1990); Hubbard v. State, 500 So.2d 1204, 1221-22 (Ala.Cr.App.), affirmed, 500 So.2d 1231 (Ala. 1986). 'When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.' Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797
(1968). See State v. Kyles, 571 So.2d 1283
(Ala.Cr.App.), on return to remand, 574 So.2d 1057
(Ala.Cr.App. 1990).
 " '[T]he question whether a consent to a search was in fact "voluntary" or was the product of duress or coercion, express or implied, is a question of fact to e determined from the totality of all the circumstances.'
 "Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047-48, 36 L.Ed.2d 854 (1973).
 "Mere submission to police authority will not suffice for consent. Schneckloth, 412 U.S. at 233, 93 S.Ct. at 2051; Bumper v. North Carolina, 391 U.S. at 548-49, 88 S.Ct. at 1792; Amos v. United States, 255 U.S. 313, 317, 41 S.Ct. 266, 268, 65 L.Ed. 654 (1921); Herriott v. State, 337 So.2d 165, 169 (Ala.Cr.App.), cert. denied, 337 So.2d 171
(Ala. 1976). While a ' "display of weapons is a coercive factor that sharply reduces the likelihood of freely given consent," ' 3 W. LaFave, Search and Seizure, § 8.2(b) at 181 (2d ed. 1987), the determination of voluntariness requires 'careful sifting of the unique facts and circumstances of each case.' Schneckloth, 412 U.S. at 233, 93 S.Ct. at 2050.
 "A show of force is a significant factor in the voluntariness equation, but it does not always vitiate consent to search. See United States v. Kelley, 953 F.2d 562, 566 (9th Cir. 1992); United States v. Phillips, 664 F.2d [971] at 1024 [(5th Cir. 1981)]; United States v. Cepulonis, 530 F.2d 238, 243-44 (1st Cir.), cert. denied, 426 U.S. 908[, 96 S.Ct. 2231, 48 L.Ed.2d 834] (1976); United States v. Evans, 519 F.2d 1083 (9th Cir.), cert. denied, 423 U.S. 916 [96 S.Ct. 224, 46 L.Ed.2d 145] (1975).
". . . .
 "If the evidence relating to a consent search is in conflict, 'it is the duty of the trial court to resolve any conflict in the testimony and not within the province of this Court. The trial court [is] in a better position to judge the demeanor of the witnesses.' Hollenquest v. State, 394 So.2d 385, 389 (Ala.Cr.App. 1980) (citations omitted), cert. denied, 394 So.2d 389
(Ala. 1981). When an accused contests the police version of the facts relating to an alleged consent search, this 'presents an issue of fact to be resolved by the trial judge based on his assessment of the relative credibility of the parties; the issue will generally not be rev[ers]ed on appeal unless the judge's finding was clearly erroneous.' 1 W. Ringel, *Page 25 Searches and Seizures, Arrests and Confessions § 9.3(a) at 9-6 (2d ed. 1992). See United States v. Cepulonis, 530 F.2d at 243; Jordan v. State, 384 So.2d 277 (Fla.App. 1980) (trial court's decision as to whether accused was consenting or was submitting to authority would not be disturbed unless clearly erroneous), abrogated on other grounds, Elsleger v. State, 503 So.2d 1367
(Fla.App. 1987).
". . . .
 "We have considered the fact that the appellant was not told he had the right to refuse to consent to the search, and we do not find it to be determinative here. In Schneckloth v. Bustamonte, the Supreme Court observed that "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent." 412 U.S. at 227, 93 S.Ct. at 2048. See generally 1 Ringel § 9.2 at 9-3. The facts of this case provide a reason to believe that, notwithstanding the failure to inform the appellant that he had the right to refuse to allow the search, his consent was nevertheless voluntary.
 "The appellant twice denied that there were any 'weapons or drugs or anything' in the vehicle. R. 27, 28, 50. '[A] belief that nothing personally incriminating is to be found in the place the police want to search [is a] factor tending to show that a consent is voluntary.' 3 LaFave at § 8.2(h) at 206. . . .
 "The argument that 'no sane man who denies his guilt would actually be willing that policemen search . . . for contraband which is certain to be discovered, 'Higgins v. United States, 209 F.2d 819, 820 (D.C. Cir. 1954), has generally been rejected, see 3 LaFave § 8.2(h) at 208, and has specifically been rejected by this Court, Quinn v. State, 611 So.2d 483, 487 (Ala.Cr.App. 1992). A defendant who believes that there is no contraband in the place to be searched or that it is hidden too well to be found might well give his voluntary consent to a search, 3 LaFave § 8.2(h) at 208 n. 178. On the other hand, the defendant may simply be 'giving up.'
 " ' "[T]he pressure exerted on a criminal by the realization that the jig is up is far different from the deliberate or ignorant violation of personal right that renders apparent consent ineffective." [Gorman v. United States, 380 F.2d 158, 165 (1st Cir. 1967)]. The soundness of that principle is dramatically revealed in North Carolina v. Alford, [400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)], where the Court held that a defendant might voluntariLy plead guilty even though he claimed to believe he was innocent. If at the time that a particular question is asked there is no agreeable answer, the fact that the answer chosen is not a pleasant one does not mean necessarily that it was not voluntarily selected. The alternative might have seemed worse. " 'The application of that principle to consent to search is particularly apt. A defendant may believe that search is ultimately inevitable whether he consents or not. In such circumstances a suspect might well feel he is better off to consent than to oppose.'
 "Leavitt v. Howard, 462 F.2d 992, 997 (1st Cir.) (footnotes omitted), cert. denied, 409 U.S. 884
(1972), quoted in United States v. Cepulonis, 530 F.2d at 244; 3 LaFave at § 8.2(h) at 208-09. 'Bowing to events, even if one is not happy with them, is not the same thing as being coerced.' State v. Lyons, 458 P.2d 30, 32 (Wash. 1969)."
Martinez v. State, 624 So.2d 711 (Ala.Cr.App. 1993).
"When the evidence pertaining to the voluntariness of a consent is conflicting, the trial court is in the best position to determine consent or lack thereof. . . . On appeal, this court will not disturb the trial court's finding unless we are convinced that the conclusion is palpably contrary to the weight of the evidence." Daniels v. State,534 So.2d 628, 654 (Ala.Cr.App. 1985), affirmed, 534 So.2d 656
(Ala. 1986), cert. denied, 479 U.S. 1040, 107 S.Ct. 898,93 L.Ed.2d 850 (1987). "[C]onflicting evidence given at [a] suppression hearing presents a credibility choice for the trial court." Atwell v. State, 594 So.2d 202, 212 (Ala.Cr.App. 1991), cert. denied, 594 So.2d 214 (Ala. 1992). *Page 26 
 "[W]hen conflicting evidence is presented on the issue of the voluntariness of a consent to search and the trial judge finds that the consent was voluntarily given, great weight must be given his judgment. This finding will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the weight of the evidence. Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty."
Weatherford v. State, 369 So.2d 863, 871 (Ala.Cr.App.), cert. denied, 369 So.2d 873 (Ala.), cert. denied, 444 U.S. 867,100 S.Ct. 141, 62 L.Ed.2d 91 (1979).
 "Although this finding was made on conflicting evidence, the trial court's 'credibility choices at suppression hearings are binding on this court.' United States v. Aldridge, 719 F.2d 368, 373 (11th Cir. 1983). 'The trial court's finding [of the voluntariness of the consent to search] will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the weight of the evidence.' Coots v. State, 434 So.2d 864, 867 (Ala.Cr.App. 1983). We indulge a presumption that the trial court properly ruled on the weight and probative force of the evidence. The trial judge was in a better position to judge thereof than this Court having seen the witnesses, observed their demeanor, and heard them testify. Sullivan v. State, 23 Ala. App. 464, 465, 127 So. 256, 257 (1930). In reviewing the correctness of the trial court's ruling on a motion to suppress, this Court makes all the reasonable inferences and credibility choices supportive of the decision of the trial court. Additionally, if the trial court's ruling is correct for any reason, it will not be reversed because the trial court assigned the wrong reason. Harnage v. State, 290 Ala. 142, 144, 274 So.2d 352, 354 (1972)."
Bradley v. State, 494 So.2d 750, 760-61 (Ala.Cr.App. 1985), affirmed, 494 So.2d 772 (Ala. 1986), cert. denied,480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987).
Here, Decatur Police Officer Jep H. Tallent testified that he and another officer went to the appellant's residence with a warrant for the appellant's arrest "for interference with custody of a young girl that he had been warned about [by the police] previously." S.H.R. 7. Tallent stated:
 "At that time I advised him of his rights, reading from a Miranda card. After, he stated that he understood his rights. I asked him if we could search his room and he asked, 'What for?' At that time Sergeant Coker told him for photographs of an obscene nature of a young lady, and he stated, 'You won't find any photographs, but you may search.' And he gave his oral permission to search his bedroom and a stereo room. He said the rest of the house belonged to his father." S.H.R. 8.
Tallent testified that the appellant was "very cooperative" and that he did not refuse an initial request to search. S.H.R. 13. The officers were in the living room of the residence less than ten minutes before the appellant gave his permission to search. S.H.R. 19. Detective Johnny Coker testified at the suppression hearing and corroborated Tallent's testimony.
Tallent and Coker were the only officers present when the appellant was arrested and gave his consent to search. These investigators were not strangers to the appellant. Tallent testified: "I told him I had a warrant for him because we had already pulled Mr. Kennedy in one time prior to this on this same young lady, and at that time we had a long talk with him about picking this child up at school." S.H.R. 12-13. Although the officers were "armed" there is no evidence that they displayed any weapons. See generally 3 W. LaFave,Search Seizure § 8.2(b) (2d ed. 1987).
At the suppression hearing, the appellant introduced evidence that he repeatedly refused the officers' requests to search the residence and that he was "psychologically intimidated into submission by the actions and words of the officers." Appellant's brief at 24. *Page 27 
The appellant admits that "[t]he testimony of State and Appellant conflicted as to whether or not Kennedy consented to the search or refused [the officers'] request to search." Appellant's brief at 21. The trial judge's finding of consent is supported by substantial evidence. The motion to suppress was properly denied.
 II.
The six photographs portraying A.K. in the nude, State's exhibits 1-6, were properly admitted as relevant and material to both the charge of the production of obscene materials and the charges of interfering with custody. Although the prosecutor offered those photographs only to prove the "actual . . . corpus delicti of the crime of production of obscene matter," R. 163, the trial judge refused the appellant's requested limiting instruction that "the photographs are in no way evidence that he interfered with custody of a minor child being A.K," R. 164. The trial judge did instruct the jury that these photographs "are limited for your consideration in connection with the charges involving the alleged victim A.K. only and may not be used by you for any other charges other than those charges involving the alleged victim A.K." R. 166. "Where evidence is admissible on a certain point only, the trial court should advise the jury to consider it on that point alone." King v. State,521 So.2d 1360, 1362 (Ala.Cr.App. 1987).
"The basic question to be asked in deciding the admissibility of a photograph of a victim, just as with any other demonstrative evidence, is whether it has a reasonable tendency to prove or disprove some material fact in issue." C. Gamble, McElroy's Alabama Evidence § 207.01(2) (4th ed. 1991). "As with evidence generally, a photograph will only be admissible if it is relevant to some proposition of fact material to the transaction or occurrence under litigation." W. Schroeder and J. Hoffman, Alabama Evidence § 11-3(a)(2) at 549 (2d ed. 1993).
 " '[M]otive is employed to define the feeling or passion of the accused which propelled him toward the commission of the charged crime.' Motive has been said to be 'the moving power which leads the mind to desire [a] result and form [a] purpose,' as contrasted with intent, which is 'the ripened purpose to effect a result.'
 "It is often said that evidence of motive is always admissible in a criminal case. Even slight evidence of motive should be received."
Schroeder Hoffman § 4-1.1(7) at 133 (footnotes omitted). See also McElroy's at § 45.01(1)-(8). Photographs may be admissible to prove motive. Holm v. State, 416 So.2d 782, 787 (Ala.Cr.App. 1982) (photographs of the scene of the crime and the appearance of the victim in this scene indicated a possible motive — robbery — for the murder); Suggs v. State, 403 So.2d 303,308-09 (Ala.Cr.App.) (in prosecution for assault with intent to murder, photographs of victim's boyfriend, who was killed in same transaction, admissible "as shedding light on the acts, motive and intent" of the defendant). cert. denied,403 So.2d 309 (Ala. 1981), cert. denied, 455 U.S. 938, 102 S.Ct. 1428,71 L.Ed.2d 648 (1982); Gilbert v. City of Montgomery,337 So.2d 140, 144 (Ala.Cr.App. 1976) (in prosecution for violation of obscenity ordinance based on purchase from defendant of magazine at newsstand, photographs of interior of newsstand depicting scenes that might impute to defendant other violations of obscenity ordinance properly admitted in order to prove motive, among other reasons); Maness v. State,57 Ala. App. 431, 435, 329 So.2d 120, 123 (in murder prosecution photographs of deceased properly admitted to show motive), cert. denied, 295 Ala. 411, 329 So.2d 126 (1976); Massey v.State, 49 Ala. App. 341, 272 So.2d 267, 269 (1972) (same), cert. denied, 289 Ala. 747, 272 So.2d 270 (1973). "[P]hotographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors." Ex parte Siebert,555 So.2d 780, 784 (Ala. 1989), cert. denied, 497 U.S. 1032,110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). See also Ex parteBankhead, 585 So.2d 112, 118 (Ala. 1991).
"A person commits the crime of interference with custody if he knowingly takes or entices: (1) Any child under the age of 18 from the lawful custody of its parent." Ala. Code 1975, § 13A-6-45(a). "A person does not commit a crime under this section if: . . . *Page 28 
(2) The actor's sole purpose is to assume lawful control of the child." § 13A-6-45(b)(2). Here, the fact that the appellant, a "friend" of the family, had taken photographs of A.K. in the nude on certain occasions would certainly be relevant and material to show the motive for his taking the child from her home and from school on certain other occasions, especially in consideration of the facts that the appellant had apparently been "authorized" to pick up the children in the past, and that A.K.'s father had warned the appellant not to pick up his children without his knowledge and permission. The photographs tended to evidence the fact that the appellant's sole purpose was not to assume "lawful control" of A.K.
The indictments charged that the "interference with custody" occurred on December 3, 1991; February 2, 1992; and March 13, 1992. The photographs were taken in May and June 1991. A.K.'s father testified that he first met the appellant in 1984 and that they became "good friends." R. 216. The father stated that, until the fall of 1991, he did not have any objection to the appellant's picking up his children because "he was a good friend of mine and I trusted him 100%." R. 218. The father stated that in the fall of 1991, he discovered that the appellant had taken A.K. and her brother from their grandparents without his permission. The father testified, "I told Danny not to ever pick my children up again from anywhere I took them unless I knew about it." R. 218. The father testified that subsequently, in December 1991, the appellant "went to Oak Park Middle School and signed my daughter out; forged my name, and took my daughter out of school." R. 220. The father stated, "When I found this out, then I whipped [A.K.] and told Danny that the next time anything like this occurred that I was going — I wasn't going to whip [A.K.] anymore; that I was going to have him arrested." R. 221. According to the father, on that occasion, A.K. had telephoned the appellant to get her out of school because she was allegedly "sick" and could not locate her parents. The father then told the appellant "that if he didn't heed to my warning that I would have him arrested and he would never see my children again." R. 224. The father stated that he later learned that, subsequent to his warning to the appellant, A.K. and her brother had telephoned the appellant to "allegedly" take her and her brother to school. The appellant picked them up in the alley and the children did not go to school that day.
 III.
The appellant argues that the trial court erred in denying his motion to sever counts VII and VIII from the other counts in the indictment and for a separate trial. Those counts charged the appellant with the second degree rape of C.F. and with the production of obscene matter involving C.F. The trial court did grant the appellant's motion to sever to the extent that he severed counts V and VI for purposes of trial. Those counts charged the appellant with the second degree rape of a third victim, K.C., and with interfering with the custody of K.C.
Rule 13.3(a), A.R.Crim.P., provides:
 "Two or more offenses may be joined in an indictment, information, or complaint, if they:
"(1) Are of the same or similar character; or
 "(2) Are based on the same conduct or are otherwise connected in their commission; or
 "(3) Are alleged to have been part of a common scheme or plan."
Rule 13.3(a) is "patterned after Rule 8(a) of the Federal Rules of Criminal Procedure." H. Maddox, Alabama Rules ofCriminal Procedure 405 (1990). In deciding consolidation claims under Rule 13.3, A.R.Crim.P., this Court has followed the case law interpreting Federal Rule 8. See, e.g., Hinton v. State,548 So.2d 547, 554 (Ala.Cr.App. 1988), affirmed, Ex parteHinton, 548 So.2d 562, 566 (Ala. 1989), cert. denied,493 U.S. 969, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989); Langham v. State,494 So.2d 910, 915 (Ala.Cr.App. 1986). One noted commentator on the federal rules has observed:
 "It is the 'same or similar character' aspect of Rule 8(a) which has provoked the greatest controversy and proved the most difficult to interpret. . . . [T]he arguments against this form of joinder are stronger *Page 29 
than those against the other forms of joinder under Rule 8(a). When the government joins offenses based on the same acts or transactions or connected acts or transactions, the prosecution is spared the burden of proving the same set of facts more than once. There is no comparable saving of trial time when offenses that are related only by being of the same type are joined, since the offenses are usually proven by different bodies of evidence. Thus, when totally unrelated, similar offenses are joined, defendant faces a 'considerable' risk of prejudice."
8 Moore's Federal Practice ¶ 8.05[1] at 8-17 and ¶ 8.05[4] at 8-21 to 8-22 (2d ed. 1991) (footnotes omitted).
As we observed in Jenkins v. State, 472 So.2d 1128
(Ala.Cr.App. 1985):
 " 'Decisions applying the "same or similar character" test have generally failed "to provide criteria which would provide guidance as to the precise scope of this rule." The view seems to be gaining acceptance, however, that the most important consideration is whether evidence of one offense would have been admissible at a trial of the other offense.' "
Jenkins, 472 So.2d at 1129 (quoting C. Wright, Federal Practiceand Procedure: Criminal 2d § 143 (1982)).
In determining whether a joint trial of consolidated indictments is permissible, this Court has consistently looked to see whether evidence of each offense would have been admissible in the trial of the other offense had the indictments been tried separately. See Byrd v. State,588 So.2d 929, 934 (Ala.Cr.App. 1991); Kirby v. State, 581 So.2d 1136,1142 (Ala.Cr.App. 1990); Perry v. State, 568 So.2d 339, 342
(Ala.Cr.App. 1990); Smith v. State, 551 So.2d 1161, 1162-63
(Ala.Cr.App. 1989); Hinton v. State, 548 So.2d at 556-57, affirmed, Ex parte Hinton, 548 So.2d at 566; Nickerson v.State, 523 So.2d 504, 506-07 (Ala.Cr.App. 1987); King v. State,518 So.2d 880, 884 (Ala.Cr.App. 1987); Wright v. State,516 So.2d 941, 943 (Ala.Cr.App. 1987); Jenkins v. State, 472 So.2d at 1129-30.
In the present case, we conclude that in a separate trial on counts I through IV of the indictment (the offenses alleged to have been committed against A.K.), evidence relating to counts VII and VIII (the offenses alleged to have been committed against C.F.) would not have been admissible. The offenses against the two victims were not "based on the same conduct or . . . otherwise connected in their commission." The criminal acts alleged to have been perpetrated against the two victims took place at different times and under different circumstances. The appellant was not charged with interfering with the custody of C.F. and he was not charged with raping A.K. The only connection between the two victims appears to have been that A.K. and C.F. were cousins, that A.K. introduced C.F. to the appellant, and that when the appellant was arrested for interference with the custody of A.K., the ensuing search of his residence disclosed nude photographs of both A.K. and C.F. The photographs, however, were not taken at the same time, and there is no evidence that either girl knew that nude photographs had been taken of the other. At trial, the offenses against A.K. and C.F. were proved by "different bodies of evidence." 8 Moore's Federal Practice ¶ 8.05[4] at 8-22.
Although it might be argued that the offenses of production of obscene matter involving A.K. and C.F. were "part of a common scheme or plan" by the appellant to take nude photographs of young girls, that argument fails because the "common scheme or plan" provision of Rule 13.3 is limited by the "common scheme or plan" exception to the rule excluding collateral crimes evidence. That is, multiple offenses alleged to have been committed by the same defendant may not be consolidated and tried jointly under the "common scheme or plan" provision of Rule 13.3 unless evidence of each offense would be admissible, under the "common scheme or plan" exception to the collateral crimes exclusionary rule, at a separate trial of the other offense. See King v. State, 518 So.2d at 884 n. 2; Ex parte Hinton, 548 So.2d at 566.
The "common scheme or plan" exception to the rule excluding collateral crimes evidence comes into play only when there is a real question as to the identity of the perpetrator. Ex parteBowden, 538 So.2d 1226, *Page 30 
1234 (Ala. 1988). In Bowden, the Supreme Court reiterated that identity must be genuinely at issue before the "identity exception" can be invoked. 538 So.2d at 1234.
In this case, the appellant did not defend on the basis that someone else had committed the acts; he seems, instead, to have "merely denied that the acts ever occurred."Anonymous v. State, 507 So.2d 972, 975 (Ala. 1987). Thus, there was no "real and open issue as to the . . . identity" of the person who had allegedly committed the charged offenses against A.K. and C.F. Bowden, 538 So.2d at 1234.
The prejudice inherent in being forced to defend against the charges of the production of obscene matter involving both A.K. and C.F., when the appellant was additionally charged with the second degree rape of C.F., but not of A.K., is obvious. In Jenkins v. State, this Court found:
 "The joinder of the three offenses [rape of a 13-year-old, rape of an adult married woman, and indecent exposure involving a 9-year-old] so prejudiced Jenkins as to deny him a fair trial. The inflammatory influence that the proof of each offense would almost inevitably exert on the others presents a situation too self-evident to be disregarded. . . . 'Since prosecutions for sex crimes, particularly ones regarded as deviate, tend in any event to invoke prejudicial preconceptions among jurors, the joinder of the indictments created an impermissible risk. For the superficial closeness of the indictments here, resulting largely from a common focus on the same kind of aberrant sexual practices, was likely to eclipse the very fundamental difference between them.' . . . 'That commonly held behavioral prejudices about those who perpetrate sex crimes, mistakenly assuming that the commission of one type of sex crime predisposes to another kind, are often unfounded has been well documented.' "
Jenkins, 472 So.2d at 1129-30 (quoting People v. Shapiro,50 N.Y.2d 747, 431 N.Y.S.2d 422, 426, 409 N.E.2d 897, 901 (1980)) (bracketed material added by court in Jenkins deleted). We hold that the trial court erred by refusing to sever counts VII and VIII from the indictment and trial of the appellant.
 IV
The appellant contends that Ala. Code 1975, § 13A-6-45, is unconstitutionally vague. He claims that § 13A-6-45 penalizes non-culpable conduct because the statute requires no criminal intent and because it fails to provide adequate notice of what conduct it proscribes.
Section 13A-6-45(a) provides, in pertinent part:
 "A person commits the crime of interference with custody if he knowingly takes or entices . . . [a]ny child under the age of 18 from the lawful custody of its parent, guardian or other lawful custodian."
Subsection (b) further provides:
 "A person does not commit a crime under this section if the actor's sole purpose is to assume lawful control of the child.
 "The burden of injecting the issue is on the defendant, but this does not shift the burden of proof."
The Commentary to § 13A-6-45 explains that the current statute replaces several earlier Alabama laws dealing with child custody, among them former § 13-1-21 (taking a girl under 14 for prostitution or marriage), former § 13-1-22 (taking a child with intent to detain or conceal it from its parents), and former § 13-7-2 (enticing a female for immoral purposes). All of the prior statutes required that the actor entertain a specific purpose or intent.[1] *Page 31 
The Commentary to § 13A-6-45 also notes that the current statute was adapted from similar provisions in Michigan, New York, and New Jersey, all of which were originally derived from the Model Penal Code.[2] It is noteworthy that since the enactment of § 13A-6-45, Michigan and New Jersey have amended their statutes dealing with Interference with Custody to add a requirement of specific criminal intent.
Currently, Michigan has one statute that applies only to intra-familial interference with custody. See Mich.Comp. Laws Ann. § 750.350a (1991). It also has a statute providing that "[a] person shall not maliciously, forcibly or fraudulently lead, take, carry away, decoy or entice away, any child under the age of 14 years, with intent to detain or conceal the childfrom the child's parent or legal guardian." Mich.Comp. Laws Ann. § 750.350(1). While this statute is now entitled "Kidnapping; child under 14," it was previously entitled "Enticing away, etc, child under 14 years of age." Id., Historical and Statutory Notes.
The New Jersey provision penalizes one who "[t]akes or detains a minor child with the purpose of concealing the minorchild and thereby depriving the child's . . . parent of custodyor visitation of the minor child." N.J.Stat.Ann. § 2C:13-4
(West Supp. 1993).
The New York custodial interference statutes are found at N Y Penal Law §§ 135.45 and 135.50 (McKinney 1987). Section 135.45, defining the second degree offense, applies, with regard to children, only to intra-familial interference with custody. Section 135.50, defining the first degree offense, however, provides:
 "A person is guilty of custodial interference in the first degree when he commits the crime of custodial interference in the second degree [defined as intending to hold a child less than 16 years old permanently or for a protracted period
and knowing that he has no legal right to do so, he takes or entices such child from his lawful custodian]
 "(1) With intent to permanently remove the victim from this state, he removes such person from the state; or
 "(2) Under circumstances which expose the victim to a risk that his safety will be endangered and his health materially impaired." (Emphasis added.)
In contrast to its Alabama predecessors and the Michigan, New Jersey, and New York provisions upon which it was based, § 13A-6-45 does not explicitly set out a specific intent requirement. Instead, subsection (a) flatly forbids knowingly taking a child from the custody of its parents. Reading that portion of the statute in isolation, we would be inclined to agree with the appellant's argument that § 13A-6-45 is unconstitutionally vague because it fails to require criminal intent and fails to give reasonable notice of the conduct that is prohibited. Read in isolation, subsection (a) does appear to reach a substantial amount of non-culpable conduct.
However, subsection (b) adds the affirmative defense that one "does not commit a crime under this section if the actor's sole purpose is to assume lawful control of the child." When read in conjunction with subsection (a), the affirmative defense of subsection (b) gives fair warning that the statute penalizes only those "takings" from custody for which the actor's purpose or intent is to assume unlawfulcontrol of the child. With the addition of the affirmative defense outlined in subsection (b), therefore, the statute effectively requires one who interferes with the custody of a child to do so with the *Page 32 
specific intent to assume "unlawful control" of the child.
Based on the specific intent requirements in the prior Alabama statutes on the subject, and on the specific intent requirements in the statutes of other jurisdictions upon which § 13A-6-45 was patterned, we conclude that the legislature intended the offense of interference with custody to be a crime requiring specific intent. See Ala. Code 1975, §13A-2-4(b), which provides:
 "Although no culpable mental state is expressly designated in a statute defining an offense, an appropriate culpable mental state may nevertheless be required for the commission of that offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, states a crime of mental culpability."
Therefore, we hold that § 13A-6-45 requires proof of the accused's specific intent to assume unlawful control of the child. That construction eliminates any constitutional objections on grounds of vagueness. See State v. Self,492 So.2d 319, 323 (Ala.Cr.App. 1986) (upholding constitutionality of statute based upon construction that criminal intent is required for its commission).
 V
The State presented prima facie evidence of the appellant's guilt on all counts. The conflicts in the testimony presented questions of fact for the jury to resolve.
The appellant's convictions are reversed and the cause is remanded because the trial court failed to sever counts VII and VIII from the remaining counts for purposes of trial. The appellant must be tried separately for the crimes against the different victims.
REVERSED AND REMANDED.
TAYLOR, PATTERSON and McMILLAN, JJ., concur.
MONTIEL, J., dissents with opinion.
[1] Section 13-1-21 made it a crime for
 "[a]ny person [to] take any girl under 14 years of age from her father, mother, guardian or other person having the legal charge of her, for the purpose of prostitution, concubinage or marriage." (Emphasis added.)
Section 13-1-22 made it a crime for
 "[a]ny person [to] unlawfully take or decoy away any child with intent to detain or conceal it from its parents." (Emphasis added.)
Section 13-7-2 made it a crime for
 "[a]ny person [to], by any pretense or device, inveigle
or entice any female into a house of ill fame or assignation or elsewhere for the purpose of prostitution or [to] take or detain any female unlawfully, against her will, with intent to compel her by force, menace or duress to marry him or any other person." (Emphasis added.)
[2] Model Penal Code § 212.4 — Interference with Custody provides:
 "(1) A person commits an offense if he knowingly or recklessly takes or entices any child under the age of 18 from the custody of its parents, guardian, or other lawful custodian, when he has no privilege to do so. It is an affirmative defense that
 "(a) the actor believed that his action was necessary to preserve the child from danger to its welfare; or
 "(b) the child, being at the time not less than 14 years old, was taken away at its own instigation without enticement and without purpose to commit a criminal offense with or against the child."